# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2338
_____

| | | |
|---|---|---|
| Joseph Baldwin Campbell, | * | |
| | * | |
| Petitioner, | * | On Appeal from the United States |
| | * | Tax Court. |
| v. | * | |
| | * | [UNPUBLISHED] |
| Commissioner of Internal Revenue, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: February 11, 2002

Filed:  February 20, 2002
_____

Before McMILLIAN, FAGG, and LOKEN, Circuit Judges.
_____

PER CURIAM.

Joseph Baldwin Campbell, a member of the Prarie Island Indian Community (the tribe), leased land from the tribe for farming until the tribe reclaimed the land to expand its gambling operations from bingo (class II gaming) to a casino (class III gaming) in 1992.  As an enrolled member of the tribe, Campbell receives per capita distributions from the tribe's gambling profits.  In 1991, 1992, 1993, and 1994, per capita distributions were made to Campbell.  The tribe reported the per capita distributions to the Internal Revenue Service (IRS) on Forms 1099-DIV, but did not withhold federal taxes. Campbell did not report his distributions as income, and received notices of deficiency.  Campbell initially challenged a tax deficiency for the

1992 distribution. After a trial in 1996, the tax court found the distribution taxable, rejecting Campbell's argument that because the tribe had reclaimed his previously farmed land for the casino, the distribution should be treated as exempt farm income. The tax court also noted that tribal members must pay federal taxes absent an express exemption, and in enacting the Indian Gaming Regulatory Act (IGRA) in 1988, Congress had explicitly stated per capita distributions of income from tribal casinos are subject to federal taxation. For the same reasons, we affirmed. Campbell v. Commissioner, 164 F.3d 1140, 1142 (8th Cir. 1999).

Campbell then filed a second petition in tax court asserting the distributions in 1991, 1993, and 1994 were not taxable. Campbell also asserted $31,238 in debt discharged by the Farmers Home Administration in 1990 was eligible for exclusion from income as "qualified farm indebtedness," he was entitled to deduct unreimbursed expenses incurred while providing services for the tribal council, and he should not have been assessed a penalty for failing to file tax returns and pay the taxes at issue. The tax court granted judgment in the favor of the IRS, holding collateral estoppel barred Campbell from contesting the taxability of the per capita distributions of income from gambling profits, the 1990 debt forgiveness was not excludable from income, Campbell could not deduct the expenses, and he owed the penalties. Campbell v. Commissioner, 2001 WL 197899, 81 T.C.M. (CCH) 1241 (2001) (Campbell II).

On appeal, Campbell first contends his debt forgiveness should not be treated as income. Debt forgiveness is not considered taxable income if, among other things, more than 50% of the taxpayer's average annual gross receipts for the earlier three taxable years came from farming. 26 U.S.C. § 108(g)(2)(B). The tax court found Campbell did not prove that more than half his income came from farming in 1987, 1988, and 1989. Campbell II, 2001 WL 197899, at *8-9. Campbell contends this finding is clearly erroneous because the tax court misunderstood Campbell's testimony. We disagree. Campbell presented no documentary evidence supporting

his bare estimates of gross farm income during the three years before 1990. The tax court did not commit error in declining to accept Campbell's estimate because his testimony about his earnings was confusing and inconsistent. Even if Campbell had shown the amount of his farming income through his own testimony, he produced no evidence about division of the income with his farming business partner. Also, Campbell testified he had "about 17 different jobs" at various times, and he failed to prove the amount of his income from them.

Campbell next asserts collateral estoppel does not bar his argument that the tribe's members could not be taxed on per capita distributions until the tribe had formally executed an IGRA gaming compact in 1994. We agree with the tax court that the requirements of collateral estoppel are satisfied. Id. at *4-8. Campbell contends his argument presents a new issue relating to different tax years from the first case, but Campbell's argument merely presents an alternative legal theory about why the tribe's per capita distributions are not taxable income.

In any event, Campbell's new legal argument fails on the merits. As required by IGRA, the tribe adopted an ordinance in 1994 requiring notice to members that federal tax laws apply to per capita payments of gambling proceeds and permitting withholding of applicable taxes from the payments. The Department of the Interior approved the ordinance in November 1994. Campbell asserts that until the tribe took this action, the per capita distributions were not subject to federal income tax. We disagree. Enacted as part of IGRA before Campbell's earlier lawsuit and the tax years in question, 25 U.S.C. § 2710(b)(3) provides: "Net revenues from any class II gaming activities . . . may be used to make per capita payments to members of the Indian tribe only if–(D) the per capita payments are subject to Federal taxation and tribes notify members of such tax liability when payments are made." As the tax court observed, this means the tribe must have an approved plan in effect before making the per capita distributions, not that tribes without such a plan can make tax-free per capita distributions. Campbell II, 2001 WL 197899, at *6 n.12. Although this section states

it applies to class II gaming, class III gaming activities are only lawful if they also meet the requirements of § 2710(b). 25 U.S.C. § 2710(d).

Campbell also argues he should be able to offset his income with the unreimbursed expenses incurred in connection with services rendered on the tribal council's behalf, either as business expenses under 26 U.S.C. § 162(a) or as charitable contributions under § 170. The tax court correctly decided Campbell is not entitled to deduct the expenses under § 162(a) because he did not show that he engaged in business for the tribal council with continuity or regularity, or that his primary purpose for performing the services was for income or profit. Campbell II, 2001 WL 197899, at *10. Further, Campbell failed to establish the claimed expenses were not reimbursable or in fact reimbursed by the tribe. Id. Campbell also failed to satisfy § 274(d)'s heightened substantiation rules that apply to expenses for meals and travel. Likewise, the tax court correctly rejected Campbell's argument that his expenses should be allowed as charitable deductions under § 170 because Campbell testified he intended to be paid for attending the meetings and to be reimbursed for his expenses, not to donate his time and the money for his expenses. Id. at *11.

We thus affirm the tax court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-4-