T.C. Memo. 2011-280

UNITED STATES TAX COURT

KAMAL A. HIRAMANEK, Petitioner, AND
ADIL HIRAMANEK, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14912-10.                    Filed November 28, 2011.

<u>Steven L. Walker</u>, for petitioner.

Adil Hiramanek, pro se.

<u>Audra M. Dineen</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Respondent determined a deficiency in
petitioner and intervenor's Federal income tax of $27,222 and an
accuracy-related penalty of $5,444 for taxable year 2006 (year at
issue).  In response to the notice of deficiency, petitioner
timely filed with this Court a petition for determination of

relief from joint and several liability on a joint return.  The issues for decision after concessions[1] are:  (1) Whether petitioner signed the 2006 joint Federal income tax return under duress and therefore is not jointly and severally liable for the 2006 deficiency under section 6013;[2] (2) whether petitioner is entitled to relief under section 66(c) and therefore is not subject to the general rule that community property is taxable one-half to each spouse; and (3) whether petitioner is an innocent spouse entitled to relief under section 6015.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this reference.  At the time petitioner filed her petition, she resided in California.  At the time intervenor filed his notice of intervention, he resided in California.

Petitioner and intervenor were married on October 14, 1998. They legally separated in March 2009, and on March 10, 2011, the

---

[1]On Apr. 22, 2010, respondent revised the adjustments in the notice of deficiency and mailed petitioner and intervenor a revised examination report including Form 4549, Income Tax Examination Changes, and Form 866-A, Explanation of Items. Respondent determined a deficiency in petitioner and intervenor's Federal income tax of $26,405 and an accuracy-related penalty of $5,281 for taxable year 2006.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Amounts are rounded to the nearest dollar.

Superior Court of California, Santa Clara County, officially dissolved their marriage effective December 6, 2010.

Intervenor obtained a master's in business administration from the University of Washington and is a certified public accountant. During 2006 intervenor worked as a director of finance for Fairchild Semiconductor International, Inc., and Spansion, Inc. Petitioner obtained a bachelor of commerce degree and during her marriage to intervenor worked as a preschool teacher for Challenger School. Petitioner and intervenor had three children during their marriage.

Throughout their marriage intervenor physically and verbally abused petitioner. During 2007 the abuse included threats against petitioner's life, physical assaults, and verbal abuse. Petitioner documented several instances of abuse in a handwritten diary from December 13, 2005, to April 4, 2007.

In 2007 intervenor prepared a 2006 joint Federal income tax return (joint return) for himself and petitioner. On the evening of April 3, 2007, intervenor presented petitioner with a copy of the joint return for her signature. Petitioner refused to sign the return without first reviewing it. Intervenor initially refused but, upon petitioner's instance, allowed her a quick glance at the return. Petitioner noticed that intervenor had claimed a casualty loss deduction of $35,000 for a break-in to their rental car while they were vacationing in Hawaii.

Intervenor had overstated the amount of the casualty loss deduction, and as a result, petitioner refused to sign the return.

Petitioner's refusal to sign the return angered intervenor. He grabbed petitioner's left arm and twisted it several times, resulting in bruising. He then struck petitioner on the back of the head with an open hand and pulled her hair with both hands. Finally, intervenor pushed petitioner on the jaw. Petitioner still refused to sign the return. Later that night, intervenor cornered petitioner in the bathroom and shoved her against the wall. He ordered her to the kitchen table and threatened her with physical harm and threatened that she would never see her children again if she did not sign the return. Petitioner, fearing for her safety, placed a scribble in the signature line of the return.

The next day, April 4, 2007, intervenor presented petitioner with a new version of the return in which he had removed the $35,000 casualty loss. Fearing for her safety, petitioner signed the return without review. On or around April 10, 2007, intervenor flew to Hong Kong on a business trip. That day, petitioner's friend drove her to the San Jose police station where she filed a report about the April 3 abuse.

On April 19, 2007, petitioner filed a petition for dissolution of marriage in the Superior Court of California,

Santa Clara County, and also applied for a temporary restraining order against intervenor. The superior court ordered intervenor to complete a 52-week domestic violence program and ordered that intervenor have supervised visitation of his children. On July 3, 2008, the superior court issued petitioner a restraining order against intervenor. Shortly thereafter, petitioner and intervenor reconciled.

In or around December 2008 respondent began examining petitioner and intervenor's 2006 joint return. Intervenor did not allow petitioner to participate in the examination of their 2006 joint return. In March 2009 intervenor approached petitioner and asked that she sign several documents that would have removed the IRS agent assigned to their case and given intervenor sole authority to communicate with respondent. Petitioner refused to sign the documents. Upon hearing her refusal, intervenor began yelling. A neighbor called the San Jose police department, and intervenor was arrested. On March 3, 2009, petitioner obtained an emergency protective order against intervenor. On March 5, 2009, petitioner filed a petition for a dissolution of marriage for a second time with the Superior Court of California, Santa Clara County. On March 10, 2011, the superior court entered a judgement of dissolution, dissolving petitioner and intervenor's marriage effective December 6, 2010.

On October 28, 2009, during examination of petitioner and intervenor's 2006 joint return, petitioner submitted a Form 8857, Request for Innocent Spouse Relief, to respondent. On February 10, 2010, respondent mailed petitioner a letter containing Form 4549 and Form 866-A. As part of the Form 4549, respondent acknowledged petitioner's request for innocent spouse relief. However, because of petitioner and intervenor's conflicting accounts as to domestic violence and the running of the statute of limitations, respondent deferred ruling on petitioner's request for innocent spouse relief until after determining the 2006 deficiency. On March 30, 2010, respondent mailed petitioner and intervenor a statutory notice of deficiency for taxable year 2006. On April 22, 2010, respondent revised the adjustments in the notice of deficiency and mailed petitioner and intervenor a revised examination report including Form 4549 and Form 866-A.

On June 30, 2010, petitioner timely filed a petition with this Court, asking the Court to determine that: (1) She is entitled to relief under the provisions of section 6015, and (2) she is not liable for the deficiency due for 2006.[3] On September 15, 2010, intervenor filed a Form 13, Notice of Intervention, and

---

[3]At the time petitioner filed her petition with this Court, she had sole custody of her three minor children. In 2010 she worked as a preschool teacher, earning an annual income of $19,710. Her monthly living expenses equaled $5,113. Intervenor is not paying child support; thus petitioner receives no financial help in raising their children.

was added as a party to this case. The trial took place on May 23, 2011, in San Francisco, California. Thereafter, on September 14, 2011, petitioner filed a motion for leave to file an amended petition to conform to the evidence, pursuant to Rule 41(b). Petitioner lodged a proposed amended petition with the motion for leave. In the proposed amended petition, petitioner asked this Court to determine that: (1) She is an innocent spouse entitled to relief under section 6015, (2) the 2006 tax return does not constitute a joint return under section 6013 because petitioner's signature was executed under duress, and (3) she is entitled to relief under section 66(c) and therefore is not subject to the general rule that community property is taxable one-half to each spouse.[4] By order dated September 28, 2011, the Court granted petitioner's motion for leave to file an amended petition.

OPINION

Petitioner does not dispute the deficiencies and penalties respondent determined for the year at issue. Instead, she claims that she signed the 2006 joint return under duress and that the return is not a joint return under section 6013. Respondent agrees. Respondent and petitioner stipulated that petitioner

---

[4]In or around January 2011, petitioner submitted an individual Federal income tax return to respondent with a filing status of married filing separately for taxable year 2006. Petitioner reported only her income as a preschool teacher and excluded intervenor's income pursuant to relief under sec. 66(c).

signed the return under duress and is therefore not liable for the deficiency and penalty at issue. Intervenor disputes petitioner's claim of duress. As a threshold matter, we note that "All concessions, including stipulated settlement agreements, are subject to the Court's discretionary review" and may be rejected in the interests of justice. McGowan v. Commissioner, 67 T.C. 599, 607 (1976).

I. Duress

Section 6013(a) permits a husband and wife to file jointly a single tax return. Where spouses elect to file a joint return for a taxable year, they are required to compute their tax for the taxable year on the aggregate income of both spouses, and the liability for that tax is joint and several. See sec. 6013(d)(3). However, where one spouse signs a return for a taxable year under duress, it is not a joint return for that year for purposes of section 6013, and the spouse who signed the joint return under duress will not be held jointly and severally liable for any deficiency in tax that the Commissioner determines. See Stanley v. Commissioner, 81 T.C. 634, 637-638 (1983); sec. 1.6013-4(d), Income Tax Regs.

In order to prove that a taxpayer signed a joint return under duress, the taxpayer must show (1) that the taxpayer was unable to resist the demands of the taxpayer's spouse to sign the joint return and (2) that the taxpayer would not have signed the

joint return absent the constraint that the taxpayer's spouse applied to the taxpayer's will. Stanley v. Commissioner, supra at 638. The determination of whether the taxpayer signed a joint return under duress is dependent on the facts and is measured by a wholly subjective standard. Id. We must therefore look closely at the circumstances in which petitioner signed the 2006 return.

Intervenor claims that he did not force petitioner to sign the 2006 return. He claims that he and petitioner together prepared the joint return and both voluntarily signed the return. We do not find intervenor's testimony credible. Though we can never truly know what happened on the night of April 3, 2007, we are more inclined to believe petitioner's version of the events of that night. Petitioner submitted and we received evidence showing bruising on her left arm. Petitioner also filed a police report of the incident and obtained a restraining order against intervenor. Finally, petitioner documented a pattern of abuse by intervenor leading up to the night of April 3.

Under the first part of the test for duress, petitioner must show that she was unable to resist the demands of intervenor to sign the joint return. Petitioner demonstrated a pattern of abuse by intervenor leading up to the signing of the return. This abuse culminated in a night of violence on April 3, 2007, in response to her refusal to sign the return. Duress may exist not

only when a gun is held to one's head while a signature is being subscribed to a document. A long-continued course of mental intimidation can be equally effective, and perhaps more so, as a form of duress. Brown v. Commissioner, 51 T.C. 116, 119-120 (1968).

Under the second part of the test for duress, petitioner must show that she would not have signed the joint return absent the constraint that intervenor applied to her will. Petitioner testified that she refused to sign the original return and only after intervenor abused her and threatened her did she reluctantly sign the return. On the record before us, we find it more likely than not that petitioner signed the 2006 return under duress. Therefore, we hold that the 2006 return is not a joint return under section 6013 and that petitioner is not jointly and severally liable for any deficiency arising from that return. Instead, petitioner is required to file an individual Federal income tax return with a filing status of married filing separately for the 2006 taxable year.

II.  Section 66(c)

California is a community property State, and under section 66, married couples who do not file joint tax returns "generally must report half of the total community income earned by the spouses during the taxable year" unless an exception applies. Sec. 1.66-1(a), Income Tax Regs. Petitioner submitted an

individual return to respondent in which she reported only her income as a preschool teacher and excluded intervenor's income pursuant to her agreement with respondent that she qualifies for relief from including community income under section 66(c). Petitioner now asks us to conclude that she falls within the section 66(c) exception.

We must now consider whether we have jurisdiction to redetermine a taxpayer's separate income tax liability when the statutory notice of deficiency is based upon a joint return and where we have decided that no joint return was filed. We have previously considered this question, and we hold that we do have jurisdiction to redetermine petitioner's separate income tax liability. See, e.g. Stanley v. Commissioner, supra at 638-639.

Section 66(c) offers two types of relief--"traditional" and "equitable". See Lantz v. Commissioner, 132 T.C. 131, 142 (2009), revd. on other grounds 607 F.3d 479 (7th Cir. 2010); Felt v. Commissioner, T.C. Memo. 2009-245, affd. 433 Fed. Appx. 293 (5th Cir. 2011). To qualify for traditional relief under section 66(c), petitioner must satisfy all four conditions provided in paragraphs (1)-(4) of section 66(c).[5] Petitioner does not

---

[5]In particular, sec. 66(c) provides:

SEC. 66(c). Spouse Relieved of Liability in Certain Other Cases.--Under regulations prescribed by the Secretary, if--

(continued...)

qualify for traditional relief as she does not satisfy the section 66(c)(3) requirement that she establish that she did not know of, and had no reason to know of, the item of community income.

A taxpayer's knowledge of an item of community income must be determined with reference to her knowledge of the particular income-producing activity.  See <u>McGee v. Commissioner</u>, 979 F.2d

---

[5](...continued)

> (1) an individual does not file a joint return for any taxable year,
>
> (2) such individual does not include in gross income for such taxable year an item of community income properly includible therein which, in accordance with the rules contained in section 879(a), would be treated as the income of the other spouse,
>
> (3) the individual establishes that he or she did not know of, and had no reason to know of, such item of community income, and
>
> (4) taking into account all facts and circumstances, it is inequitable to include such item of community income in such individual's gross income,

then, for purposes of this title, such item of community income shall be included in the gross income of the other spouse (and not in the gross income of the individual).  Under procedures prescribed by the Secretary, if, taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either) attributable to any item for which relief is not available under the preceding sentence, the Secretary may relieve such individual of such liability.

66, 70 (5th Cir. 1992), affg. T.C. Memo. 1991-510; Hardy v. Commissioner, T.C. Memo. 1997-97, affd. 181 F.3d 1002 (9th Cir. 1999). Petitioner was aware that intervenor was employed by Fairchild Semiconductor International, Inc., and Spansion, Inc., and was aware that his wages were used to pay their household living expenses. While petitioner may not have known the precise amount of intervenor's salary, she knew of his employment. Accordingly, we find that petitioner knew, or had reason to know, about intervenor's wages.

We now consider whether petitioner is entitled to equitable relief under section 66(c). Respondent determined that petitioner was entitled to equitable relief, but intervenor challenges that determination. Under regulations prescribed by the Secretary, if taking into account all facts and circumstances, it is inequitable to include an item of community income in a spouse's gross income, then such item of community income shall be included in the gross income of the other spouse (and not in the gross income of the individual). Sec. 66(c)(4); sec. 1.66-4(b), Income Tax Regs.

The Commissioner has outlined procedures the Commissioner will follow in determining whether a requesting spouse qualifies for equitable relief under section 66(c). See Rev. Proc. 2003-61, 2003-2 C.B. 296. The requesting spouse must meet five threshold conditions before the Commissioner will consider a

request for relief.  Id. sec. 4.01, 2003-2 C.B. at 297.

Respondent concedes that petitioner has met the preliminary

requirements for relief.  We agree.

>A.    Balancing Test for Determining Whether Section 66(c)
>       Equitable Relief Would Be Appropriate

Where, as here, the requesting spouse meets the five

threshold conditions set forth in Rev. Proc. 2003-61, sec. 4.01,

we employ a balancing test to determine whether, taking into

account all the facts and circumstances, it would be inequitable

to hold the requesting spouse liable for all or part of the

unpaid liability.  The Commissioner has listed factors the

Commissioner considers in determining whether a taxpayer

qualifies for relief.  See id. sec. 4.03, 2003-2 C.B. at 298.

The factors include whether the requesting spouse:  (1) Is

separated or divorced from the nonrequesting spouse, (2) would

suffer economic hardship if relief were denied, (3) had knowledge

or reason to know that the nonrequesting spouse would not pay the

income tax liability, (4) received significant economic benefit

from the unpaid income tax liability, (5) complied with income

tax laws in years after the year at issue, (6) was abused by the

nonrequesting spouse, and (7) was in poor health when signing the

return or requesting relief; and whether the nonrequesting spouse

had a legal obligation to pay the outstanding tax liability.  Id.

sec. 4.03(2).  The list is nonexhaustive, and no single factor is

determinative.  Id.  We address each of the factors in turn.

### 1.   Marital Status

We first consider marital status.  This factor weighs in favor of the requesting spouse if she is separated or divorced from the nonrequesting spouse.  Id. sec. 4.03(2)(i).  The parties agree that petitioner is divorced from intervenor.  This factor weighs in favor of relief.

### 2.   Economic Hardship

The second factor is whether the requesting spouse would suffer economic hardship if relief were denied.  A denial of section 66(c) relief imposes economic hardship if it prevents the requesting spouse from being able to pay her reasonable basic living expenses.  Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs.  Reasonable basic living expenses are based on the taxpayer's circumstances but do not include amounts needed to maintain a luxurious standard of living.  Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs.  Relevant circumstances include the taxpayer's age, ability to earn an income, number of dependents, and status as a dependent.  Sec. 301.6343-1(b)(4)(ii)(A), Proced. & Admin. Regs.

Petitioner is a part-time teacher.  In 2010 she earned $19,710.  She has sole custody of her and intervenor's three minor children and is solely responsible for their support because intervenor is not paying child support.  Her monthly expenses equal $5,113.

On the record, we find that petitioner would suffer economic hardship if relief is not granted. This factor weighs in favor of relief.

### 3. Knowledge or Reason To Know That Nonrequesting Spouse Would Not Pay Liability

A third factor focuses on whether the requesting spouse knew or had reason to know of the item as to which section 66(c) relief is sought. We find that petitioner knew or had reason to know of the community income. This factor weighs against relief.

### 4. Nonrequesting Spouse's Legal Obligation To Pay Liability

A fourth consideration is whether the nonrequesting spouse had a legal obligation to pay the tax liability. Intervenor does not have a legal obligation to pay the income tax liabilities pursuant to a divorce decree or other agreement. Therefore, respondent determined that this factor is neutral, and we have no information to conclude otherwise.

### 5. Economic Benefit From Items Giving Rise to Liability

A fifth consideration is whether the requesting spouse received significant benefit from the community income. Petitioner credibly testified that she received no gifts or other benefits beyond normal support. This factor weighs in favor of relief.

### 6. Subsequent Compliance With Income Tax Laws

A sixth consideration is whether the requesting spouse made a good faith effort to comply with income tax laws in subsequent years. Respondent stipulates that petitioner has been in compliance with the income tax laws since 2006. Therefore, this factors weighs in favor of relief.

### 7. Abuse by Nonrequesting Spouse

As discussed above, we find that intervenor abused petitioner. Therefore this factor weighs in favor or relief.

### 8. Poor Health When Signing Return or Requesting Relief

Petitioner did not allege that she was in poor health when she signed the return or when she requested relief. Therefore, respondent determined that this factor is neutral, and we have no information to decide otherwise.

### B. Conclusion

In summary, five factors weigh in favor of relief, one factor weighs against relief, and two factors are neutral. After weighing the testimony and evidence in this fact-intensive and nuanced case, we find that petitioner is entitled to relief under section 66(c).

## III. Section 6015

Having found that petitioner signed the 2006 joint return under duress, we need not address petitioner's section 6015 claim

for relief because a return signed under duress is not a joint return.  See <u>Brown v. Commissioner</u>, 51 T.C. at 120-121.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.